**APPALACHIAN POWER COMPANY, American Electric Power Company, Inc., Kentucky Power Company, Columbus and Southern Ohio Electric Co., Indiana & Michigan Electric Company, and Ohio Power Company, Plaintiffs,**

v.

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA; Otis D. Casto, As member of the Public Service Commission of West Virginia; Michael D. Greer, As member of Public Service Commission of West Virginia, Defendants.**

Civ. A. No. 2:85–0098.

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 13, 1986.

Judgment Order Feb. 14, 1986.

Charles McElwee and William C. Porth, Robinson & McElwee, Charleston, W.Va., A. Joseph Dowd, Edward J. Brady, Kevin F. Duffy and Marsha R. Schermer, American Elec. Power Service Corp., Columbus, Ohio, for plaintiffs.

Richard E. Hitt, Mark G. Thessin and Amy M. Lecocq, Charleston, W.Va., for Public Service Com'n of W.Va., Otis D. Casto and Michael D. Greer.

Billy Jack Gregg and Barbara Day, Consumer Advocate Div., W.Va. Public Service Com'n, Charleston, W.Va., for W.Va. residential customers of Appalachian Power Co.

## MEMORANDUM OPINION

DENNIS R. KNAPP, District Judge.

This case is presently before the Court on cross-motions of the parties for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure, and on Defendants' further motion to strike certain portions of Plaintiffs' affidavits in support of their motion for summary judgment.

Plaintiffs instituted this action on January 18, 1985, challenging an order the Public Service Commission of West Virginia (PSC) entered on December 28, 1984, in

Appalachian Power Company's (Appalachian) rate case No. 83–697–E–42T, involving a Transmission Agreement dated April 1, 1984 among Appalachian and four of its affiliated companies.[1]

Each of the five signatories to the Transmission Agreement owns and maintains portions of the extra-high voltage interstate electric transmission network of the American Electric Power Company System (AEP System), which traverses the extensive seven-state area in which the five companies operate. The Transmission Agreement provides for the allocation of the cost of this entire network among the five companies according to a formula which takes into account the demand which each company places upon the network for the benefit of its customers. Until the Transmission Agreement became effective on January 22, 1985,[2] each signatory company had borne the entire cost of that part of the network that is physically located in its state or designated area.

The December 28, 1984 order required Appalachian to submit the Transmission Agreement to the PSC for its approval under the provisions of *W. Va. Code*, § 24–2–12,[3] and denied Appalachian recovery from its customers in West Virginia of $1.6 million in Federal Energy Regulatory Commission-(FERC)approved costs to be incurred under the Transmission Agreement commencing January 22, 1985, until after the PSC had approved the Agreement and had found the costs resulting therefrom to be reasonable for inclusion in Appalachian's rates.

Further, the December 28, 1984 order reversed an earlier order entered on September 28, 1984, wherein the PSC concluded that it could neither require Appalachian to submit the Transmission Agreement to it for its approval under *W. Va. Code*, § 24–2–12,[3] nor deny to Appalachian recovery of its FERC-approved costs incurred thereunder. The PSC concluded that its powers to regulate the Transmission Agreement and Appalachian's cost recovery thereunder had been preempted by the Federal Power Act which gives the FERC exclusive jurisdiction to regulate the transmission and wholesale sale of electric energy in interstate commerce.

Defendants contend that pursuant to *W. Va. Code*, § 24–2–12, they have the power to determine whether Appalachian acted prudently in becoming a signatory to a Transmission Agreement which would obligate its customers to pay in the future a greater share of the cost of the AEP System EHV Interstate Transmission Network (said to be $22 million annually) than they otherwise would have paid had the company not become a party to the Agreement.

Plaintiffs maintain that the PSC's view of the law as expressed in its September 28, 1984, order was correct and that the PSC erred in reversing that order. They claim that the December 28, 1984 order:

(a) unlawfully invades the exclusive jurisdiction of the FERC to regulate the transmission of electric energy in interstate commerce in contravention of Part II of the Federal Power Act (16 U.S.C. §§ 824–824k) and the Supremacy Clause

---

**1.** Ohio Power Company, Indiana & Michigan Electric Company, Columbus and Southern Ohio Electric Company, and Kentucky Power Company. These four companies and Appalachian are subsidiaries of American Electric Power Company, Inc.

**2.** The January 22 date came from an order of the Federal Energy Regulatory Commission (FERC) entered on August 21, 1984, 28 FERC ¶ 161,228, which accepted as a rate schedule the filing of the Transmission Agreement made on March 29, 1984 but which suspended the terms and conditions of the Agreement for five months to become effective on January 22, 1985, subject to refund.

**3.** *W. Va. Code*, § 24–2–12, in its relevant part provides:

Unless the consent and approval of the Public Service Commission of West Virginia is first obtained: ... (f) no public utility subject to the provisions of this chapter ... may, by any means, direct or indirect, enter into any contract or arrangement for management, construction, engineering, supply or financial services or for the furnishing of any other service, property or thing, with any affiliated corporation, person or interest; ....

of the United States Constitution (Art. VI, Cl. 2) (Supremacy Clause/Preemption Claim);

(b) impermissibly regulates or burdens commerce among the several states in violation of the Commerce Clause of the United States Constitution (Art. I, § 8, Cl. 3) (Commerce Clause Claim); and

(c) deprives Appalachian of a disinterested, impartial decision-making tribunal in violation of the Due Process Clause of the United States Constitution (Amend. XIV, §§ 1 and 5; Art. V, § 1) and the Civil Rights Act of 1871 (42 U.S.C. § 1983) (Due Process Clause Claim).

At this point the Court finds it appropriate to present a brief review of the development of the case.

On January 25, 1985, the Consumer Advocate Division of the PSC was permitted to intervene on the side of the Defendants. Thereafter, the Court granted Plaintiffs' motion for a preliminary injunction which in effect reinstated the PSC's September 28, 1984 order. The injunction order was stayed, however, pending resolution of the issues in an expedited appeal of the matter to the Fourth Circuit Court of Appeals. In granting the preliminary injunction, this Court concluded, inter alia, that it had jurisdiction of the action, that it was not precluded from exercising jurisdiction by the Johnson Act of 1934 (28 U.S.C. § 1342), and that it should not abstain from exercising jurisdiction under any of the abstention doctrines. The Court of Appeals for the Fourth Circuit affirmed this Court's order granting the preliminary injunction.

The stay of the preliminary injunction subsequently was dissolved on August 6, 1985, and Rule 12(b) motions filed by the Defendants were denied on August 28, 1985. The Defendants and the Consumer Advocate Division thereafter filed their answers to the complaint.

Defendants' motion to stay proceedings until the FERC had decided certain motions filed by the PSC and other intervenors challenging federal preemption and the scope of the FERC's jurisdiction to determine the validity of the Transmission Agreement was denied on November 5, 1985. Prior thereto the FERC had issued its rulings in Docket Nos. ER84–348–002, ER84–348–003, ER84–348–004 and ER84–348–005, 32 FERC ¶ 61,363.

Plaintiffs now seek a judgment declaring that the PSC's order entered on December 28, 1984, violates the Supremacy, Commerce, and Due Process clauses of the United States Constitution, and is therefore unenforceable. They further seek an injunction prohibiting the PSC and its members and successors from enforcing and implementing the December 28, 1984 order.

In support of their motion for summary judgment, Plaintiffs rely upon the verified complaint, the admissions of the Defendants and the Consumer Advocate Division in their respective answers to the complaint, the affidavits of Gregory S. Vassell, Edward J. Brady and Morris E. McCrary, a Memorandum of Law, and a Reply Memorandum of Law.

The Defendants and the Consumer Advocate Division, in opposing Plaintiffs' motion for summary judgment, contend that there are genuine issues of material fact and that, as a matter of law, Plaintiffs are not entitled to a judgment in their favor. The Defendants filed the affidavits of Mark G. Thessin, Robert C. Stier, Michael D. Greer, Paul E. Drake, and Charlotte R. Lane.

The Defendants in their cross-motion for summary judgment seek a judgment in their favor upon all claims presented by the Plaintiffs on the grounds that Plaintiffs' complaint does not allege an actual case or controversy, or, alternatively, in their favor on the Due Process Claim on the ground that the PSC enjoys immunity from suit under Article VI, Section 35, of the West Virginia Constitution and the Eleventh Amendment of the United States Constitution and on the further ground that the PSC is not a "person" within the meaning of 42 U.S.C. § 1983.

The Defendants also seek to strike parts of the affidavits of Messrs. Brady and McCrary on behalf of the Plaintiffs on the grounds that they constitute hearsay state-

ments and that the parts of the Brady affidavit objected to also are not relevant.

The Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The AEP System consists of a parent holding company, American Electric Power Company, Inc., and various subsidiary companies wholly owned by AEP. AEP's subsidiaries include, among others, five electric utility operating companies, Appalachian, Kentucky Power Company (KPC), Columbus and Southern Ohio Electric Company (C & SOE), Indiana & Michigan Electric Company (I & M), and Ohio Power Company (OPC) (collectively the "AEP System companies" or "members"). AEP and the five System companies are the Plaintiffs in this action.

2. Appalachian, a Virginia corporation, operates in the States of West Virginia and Virginia and is subject to regulation of its intrastate rates for retail electric service provided to customers in West Virginia by the Defendant PSC.

3. AEP, KPC, C & SOE, I & M and OPC are, respectively, New York, Kentucky, Ohio, Indiana and Ohio corporations. The four last-named companies operate as electric utilities exclusively in the states in which they are incorporated except that I & M also operates as an electric utility in Michigan. Collectively the AEP System companies, including Appalachian, supply electric energy to residential, commercial and industrial customers and public authorities in seven states, including Appalachian in its twenty-one county service area in Southern West Virginia.

4. Defendant PSC was established by the Legislature of West Virginia with power to sue and be sued, and under the provisions of Chapter 24 of the Code of West Virginia has regulatory jurisdiction over the intrastate activities of Appalachian in West Virginia. Defendants Otis D. Casto and Michael D. Greer, together with Charlotte Lane, are members of and presently constitute the Public Service Commission of West Virginia. Defendants Otis D. Cas-to and Michael D. Greer were members of the Commission at the time the PSC issued its order of December 28, 1984 in PSC Case No. 83–697–E–42T.

5. The electric generating facilities and load centers of the AEP System companies are interconnected by means of the AEP System EHV Interstate Transmission Network, and extensive seven-state interstate network of transmission facilities operating at 765 Kilovolts, 500 Kilovolts and 345 Kilovolts over which electric energy generated by any one of these companies in a particular state is transmitted in bulk from that state for local distribution and consumption in other states. The AEP System EHV Interstate Transmission Network traverses the extensive geographic area in which the AEP System companies operate and stretches some 400 miles from the Illinois border in the west to the Pennsylvania border in the east, and some 500 miles from Southwest Michigan in the north to the North Carolina border in the south. Not only does this network of transmission facilities tie together the various generating plants and load centers of the AEP System companies, but it also makes possible 111 direct high-voltage interconnections with 27 unaffiliated utilities.

6. Each of the five AEP System companies owns and maintains that part of the AEP EHV Interstate Transmission Network that is physically located in its state or designated area. Prior to the Transmission Agreement, with the single exception of one transmission line located in Indiana, the financial responsibility for each mile of this interstate network of transmission lines was borne by the AEP System member in whose state or designated area the transmission lines and facilities were located.

7. The AEP System companies entered into a Transmission Agreement, dated as of April 1, 1984, which provides an allocation formula whereby each AEP System member having an investment in the AEP EHV Interstate Transmission Network greater than its Member Load Ratio (MLR) share

of the total AEP System investment will be reimbursed for its "surplus" investment by those "deficit" members (including Appalachian) having an investment less than their MLR share of the total System investment. (A members' MLR in any month is the ratio of its maximum demand during the previous 12–month period to the sum of all members' maximum demands during that same period.) The Transmission Agreement provides for a five-year phase-in for such equalization payments so that in the fifth year all of the parties to the Transmission Agreement will be carrying, and will continue thereafter to carry, their full MLR share of the total AEP System investment in the AEP EHV Network.

8. On March 29, 1984, the Transmission Agreement was filed with the FERC in Docket No. ER84–348–000 (later renumbered and hereinafter referred to as ER84–348–001). A copy of the filing was served upon the PSC as required by the Federal Power Act (16 U.S.C. § 824a).

9. By order of August 21, 1984, in Docket No. ER84–348–001, the FERC accepted the Transmission Agreement for filing as a rate schedule with the terms and conditions being suspended for five months, to become effective on January 22, 1985, subject to refund.

10. Notice of the filing of the Transmission Agreement with the FERC was made in the Federal Register with responses and notices to intervene due on or before April 23, 1984. The Defendant PSC and the Defendant-intervenor filed separate interventions in FERC Docket No. ER84–348–001. Various groups and public bodies located in other states in the AEP service area also have intervened.

11. In its pleadings to intervene, the PSC urged rejection of the Transmission Agreement characterizing it as being unreasonable, unfair and unwarranted. It further argued before the FERC that the Agreement will impose undue hardship on AEP ratepayers in West Virginia by imposing excessive cost responsibilities on certain of the operating companies, including AEP.

12. The PSC's September 28, 1984 order in Case No. 83–697–E–42T states (p. 53) that "the stipulation [among all parties of record except the Consumer Advocate Division of the PSC] provides that ... once [the $1.6 million is included] in Apco's [Appalachian's] rates, if FERC later reduces the allowed cost, Apco will not only return to its West Virginia customers the difference between the amounts already collected and the amount finally approved but also will immediately reduce its retail rates to reflect the appropriate amount."

13. On October 9, 1984, the Consumer Advocate Division filed with the PSC a Petition for Reconsideration, Rehearing, Reargument and Clarification of its final order of September 28, 1984. Therein, the Consumer Advocate Division argued that the PSC was wrong in its analysis in that the PSC could require approval of the Transmission Agreement under the provisions of *W.Va.Code,* § 24–2–12. The PSC eventually agreed, and its order of December 28, 1984, reversed in part its earlier decision of September 28, 1984. Said December 28, 1984 order required Appalachian to submit to the PSC for its approval under the provisions of *W.Va.Code,* § 24–2–12, the Transmission Agreement and denied to Appalachian recovery of $1.6 million in costs previously allowed by the September 28, 1984 order under the terms of the Transmission Agreement unless and until Appalachian submits the Transmission Agreement to the PSC for its approval under *W.Va.Code,* § 24–2–12, and the PSC grants such approval and finds the costs resulting from the Transmission Agreement to be reasonable.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1337, 1343, 2201 and 2202 and 42 U.S.C. § 1983, and the complaint states claims upon which relief can be granted.

2. This Court is not inhibited in the exercise of its jurisdiction of the case by any statutory or judicially-created restraint.

3. Art. I, Sec. 8, Cl. 3 of the United States Constitution vests Congress with the power "[t]o regulate commerce ... among the several States," and Art. VI, Cl. 2 declares that laws made by Congress pursuant to that authority "shall be the supreme Law of the Land" to which the judges in every state are bound.

4. In the exercise of the power delegated to it to regulate commerce among the several states, Congress enacted the Federal Power Act (16 U.S.C. §§ 791a, et seq.) in 1935 and charged the Federal Power Commission (now the FERC) with the responsibility of administering its provisions. Congress, in Part II of the Act (16 U.S.C. §§ 824–824k), declared that it was "necessary in the public interest" for power to be delegated to the FERC to regulate facilities used for the transmission of electric energy from one state for consumption in another. Included within that power is the authority to find that any contract affecting a rate or charge for any such transmission of electric energy is unjust and unreasonable or grants an undue preference or disadvantage to any person, or is not in the public interest, and to determine and order that any contract be modified so as to be just and reasonable and in the public interest or that it be modified to eliminate any undue discrimination or preference. [16 U.S.C. § 824d and 824e; *Pennsylvania Power and Light Co.*, 23 FERC ¶ 61,325 (June 2, 1983)] The "public interest" which prompted Congress to empower the FERC to regulate facilities used for the transmission of electric energy from one state for consumption in another and the "public interest" which the FERC must consider in deciding whether to approve or disapprove a contract affecting a rate or charge for any such transmission is the collective interests of the fifty states which is not only greater but may be quite different from the interest of the public in any one state. See, *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581, (1941).

■ 5. The Transmission Agreement among the five signatory members of the AEP System is quite clearly a contract affecting a rate or charge for the use of facilities used in the transmission of electric energy from one state for consumption in another, and thus falls within the jurisdiction of the FERC to regulate pursuant to the powers vested in that agency by Part II of the Federal Power Act. Both the FERC in its September 13, 1985 order and the Defendants in their Memorandum of Law in Opposition to Plaintiffs' motion for summary judgment have concluded or conceded that the FERC has jurisdiction over the Transmission Agreement to make those determinations required of it by the Federal Power Act. Accordingly, there is no fact at issue which stands in the way of the Court's determination and conclusion that the FERC has jurisdiction over the Transmission Agreement.

6. As in all matters of statutory construction, preemption, which has its roots in the Supremacy Clause, is a matter of congressional intent. Accordingly, whether the matters which the PSC has undertaken to regulate by its order of December 28, 1984, have been preempted by the Federal Power Act presents strictly legal issues which are to be resolved in accordance with well established principles laid down by the United States Supreme Court. See, *Michigan Canners v. Agricultural Board*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399, 406 (1984); *Capitol Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984); *Connecticut Light & Power Co. v. FPC*, 324 U.S. 515, 527, 65 S.Ct. 749, 754, 89 L.Ed. 1150 (1945); *United States v. Public Utilities Commission*, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020 (1953); *Guschke v. City of Oklahoma City*, 763 F.2d 379, 383 (10th Cir.1985); *National Gerimedical Hospital and Gerontology Center v. Blue Cross of Kansas City*, 479 F.Supp. 1012, 1015 (W.D.Mo. 1979).

■ 7. Federal law may preempt state law in any of the following ways:

First, in enacting the federal law, Congress may explicitly define the extent to which it intends to preempt state law....
Second, even in the absence of express

preemptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government.... Finally, if Congress has not displaced state regulation entirely, it may nonetheless preempt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible, ... or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Michigan Canners v. Agricultural Board,* supra; See also, *Capital Cities Cable v. Crisp,* supra; *Hines v. Davidowitz,* supra.

■ 8. Whatever authority has been granted to the PSC to grant or withhold its consent and approval to Appalachian to enter into the Transmission Agreement under the provisions of *W.Va.Code,* § 24–2–12, and whatever power the PSC may have under state law to determine whether it was prudent for Appalachian to have become a signatory to the Transmission Agreement have been preempted by the Federal Power Act because all such state authority and power conflict with the Federal Power Act and stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in the passage of that Act.

Congress' declaration of policy in Part II of the Federal Power Act that the federal regulation provided for therein is "to extend only to those matters which are not subject to regulation by the States" [16 U.S.C. § 824(a)] is "one of great generality" and "[i]t cannot nullify a clear and specific grant of jurisdiction" to the FERC to regulate facilities used for the transmission of electric energy in interstate commerce. *Connecticut Light & Power Co. v. FPC,* supra.

9. *W.Va.Code,* § 24–2–12, and Part II of the Federal Power Act are identical in substance. The determinations respecting the Transmission Agreement which the FERC is directed to make under Part II of

the Federal Power Act [16 U.S.C. §§ 824d and 824e] encompass the determinations which the PSC seeks to make under *W.Va. Code,* § 24–2–12, as illustrated below:

| Federal Power Act Determinations (16 U.S.C. § 824d) | W.Va. Code, § 24–2–12, Determinations |
|---|---|
| 1. Is the Agreement just and reasonable? | 1. Are the terms and conditions of the Agreement reasonable? |
| 2. Does the Agreement grant an undue preference or disadvantage to any person? | 2. Is any party to the Agreement given an undue advantage over the other? |
| 3. Is the Agreement in the public interest? | 3. Do the terms and conditions of the Agreement adversely affect the public in this state? |

■ 10. Where the federal government, in the exercise of its superior authority to regulate commerce among the several states, has, in enacting the Federal Power Act, provided a complete scheme of regulation of facilities used for the transmission of electric energy in interstate commerce and has therein provided standards for the approval or disapproval of contracts affecting a rate or charge for such transmission, states cannot by statute or otherwise interfere therewith.

■ 11. The submission of the Transmission Agreement to the PSC required by the PSC's order of December 28, 1984, has been preempted by Part II of the Federal Power Act in that the Federal Power Act requires the FERC to make an assessment of not only the public interest in West Virginia, but, more comprehensively, an assessment and balancing of the public interest in all of the states in which the public utility signatories to the Transmission Agreement operate.

12. The PSC, the Consumer Advocate Division, other state regulatory bodies, and residential and industrial consumer representatives are all parties to the pending FERC proceedings involving the Transmission Agreement. All of these parties have the opportunity to seek modification of the Transmission Agreement along the

lines which they believe will result in a fairer apportionment of costs. The FERC is the only forum in which all of the state regulatory bodies, including the PSC, as well as the other parties, may appear and represent their various interests.

13. The prevention of the FERC from performing its statutory duties in the interests of the larger national public interest under the Federal Power Act by the action of the PSC in the interests of a narrower state public interest under *W.Va.Code*, § 24–2–12, is prohibited by the preemption doctrine heretofore noted.

14. The PSC does not have the power to deny to Appalachian recovery of its costs incurred under a FERC-approved Transmission Agreement. If the PSC had that power it could do indirectly what it is barred from doing directly. Denial of cost recovery would in effect nullify an Agreement which the FERC might approve as being in the national interest. Control of cost recovery provides a superior power over the Agreement and would stand as a clear obstacle to the accomplishment and execution of the purposes and objectives of the Federal Power Act.

15. The power and authority asserted by the PSC to give or withhold its consent and approval to Appalachian to enter into the Transmission Agreement under the provisions of *W.Va.Code*, § 24–2–12, to determine whether it was prudent for Appalachian to have become a signatory to the Transmission Agreement, or to deny to Appalachian recovery of its FERC-approved costs incurred thereunder, violate the Commerce Clause of the United States Constitution.

Having determined that the order of the PSC of West Virginia of December 28, 1984, pursuant to the provisions of *W.Va. Code*, § 24–2–12, violated the Supremacy Clause of the United States Constitution (Art. 6, cl. 2) and that the matters which the PSC attempted to regulate by said order have been preempted by the provisions of the Federal Power Act; and further violated the Commerce Clause of the Unit-ed States Constitution, it becomes unnecessary to consider the due process claim asserted by Plaintiffs.

In accordance with the Court's Findings of Fact and Conclusions of Law above set out, the Court is of the opinion that Plaintiffs' motion for summary judgment should be granted and the Defendants' like motion should be denied.

Further, the Court finds no merit in Defendants' motion to strike the affidavits filed by Plaintiffs in support of their motion for summary judgment.

An order will issue hereon.

### JUDGMENT ORDER

In accordance with the Court's Findings of Fact and Conclusions of Law set out in the Memorandum Opinion of even date herewith, it is hereby ORDERED that Plaintiffs' motion for summary judgment be granted; that Defendants' like motion be denied; and that Defendants' motion to strike the affidavits filed by Plaintiffs in support of their motion be denied.

Except for the due process claim, it is therefore further ORDERED that the declaratory relief sought by Plaintiffs in their motion for summary judgment be granted; and it is so ORDERED.

It is further ORDERED that the Public Service Commission of West Virginia be restrained from implementing the provisions of *W.Va.Code*, § 24–2–12, as they may relate to Interstate Transmission Lines Agreements.

It is also ORDERED that all final orders of the Federal Energy Regulatory Commission relating thereto shall be given full effect.

It is further ORDERED that this action be dismissed and stricken from the docket of this Court.

The Clerk is directed to file the Court's Memorandum Opinion of even date herewith and send certified copies of the same, together with this order, to all counsel of record herein.